Is 2017-30122 Joaquin Barrera vs. BP? Your Honor, may I please the Court? My name is Caroline Adams, and I represent 104 plaintiffs who are appellants in this case. This case arises out of the well-known BP oil spill that happened on April 20th of 2010. The group of plaintiffs that I'm here on behalf of today are all Mexican nationals, and they do not reside in the United States, but they are fishermen, and they have suffered losses due to the BP oil spill. Here today we represented over 2,000 clients. This is only on 104 of those clients, and they were dismissed. Their maritime claims were dismissed by Judge Carl Barbier in the United States Court in Louisiana for the Eastern District of Louisiana. What happened in that case, the circumstances are a little bit unusual in that case. These clients came to us, and we filed an answer in claim and limitations arising out of those losses. We later filed a lawsuit and asked for a class action here in Houston, and it was transferred to Judge Barbier. From 2010 until 2016, there was zero action taken with respect to these groups of clients. On March 29th of 2016, we received an order which provided essentially a 34-day statute of limitations in which each of our clients had to sign a sworn statement, which could not be signed by the attorney. It had to be signed by the client. Instead of filing the mass lawsuit, we had to file an individual lawsuit for each client. Then you requested a 90-day extension. You got a 14-day extension. You requested another 30-day extension, but you didn't get the other extension, and then they were dismissed. Do you concede that you didn't comply with the order on behalf of your clients? Yes, we do. All efforts were taken. It was not an intentional conduct by our office or by our clients. It was a lack of communication. Part of it is this group of clients are fishermen, and they are located in Mexico. Unfortunately, the mail system doesn't always work in the United States. It's much less reliable in Mexico. Unfortunately, our clients are fishermen and don't rely upon electronic means. The telephone and email and fax is not something that is part of their daily use. We were unable to reach them. Essentially, we had a 47-day statute of limitations that was ultimately created with the one extension that was granted. We did ask, but our hands were somewhat tied. Our clients want to participate, but after six years, I think to some degree they were not expecting that call or that we would not be able to take action on their behalf, which they relied upon us to do. In some of the cases, we spoke to spouses. As we sit here today, however many years since, what evidence do we have of all the stuff you're saying? Well, there has been, which is not part of this appeal, but there has been two other pretrial orders that were essentially the same, requiring signatures from our clients. And I guess just for clarification, exactly what is it that you are asking? Because they have called us. Sometimes one of our letters didn't reach them for six months, and then they contacted us, but it was too late. I'm saying what evidence? You understand what the term evidence means? Yes, I do. I'm saying what evidence do we have of any of the stuff you just told us? Well, and I understand there's no affidavit from the client specifically, but once again, that is an issue getting. . . Or even from a lawyer that says we tried these 12 ways to get them, and they're out on a ship or unavailable. There was no support for the position that these people were unable to be contacted. And then there was even an opportunity at the end, back in June, another chance, and no support was offered. Isn't that correct? It is correct, but during that time there were some negotiations that were going on, and we were just doing our best to get that information. But there's not even a thing from a paralegal that says we made these 12 inquiries, we've been desperately trying to reach our client through their mother's house with the last known address that we have in our file. There's nothing, and it didn't require the client to give the affidavit. There's no support for the position that the people couldn't be contacted. And Judge Barbier even gave an opportunity later, after April, in June, to provide good cause for reinstatement. And that was not ever provided. Well, the one bit of evidence was some of the late declarations that did come in in our attempt to file the lawsuits. The pretrial order, and I understand this is just a plea on the court to allow these cases to go forth and be decided on their merits. I absolutely understand that. We did provide those that came in late. Can you give us record sites for what we should look at on that? Yes, Your Honor, I can do that. There was two clients that are brought up. Mr. Barrera. It's SCCP 20 de Abril del Poblado Ignacio Zaragoza. And the record site is 16265. This is one of the cases where he actually did comply but didn't understand he had to sign the declaration, so he returned it and we filed it, but it wasn't signed. So that would not be an example of the guy that was unavailable because he didn't have a cell phone and this kind of stuff. What I'm asking for is record sites to someone that would provide evidence supporting the generic propositions you've made here today, people hard to locate and so on. Yes, Your Honor, that was just an example of someone not being reached in time and then responding. But the problem with him was he didn't understand what he was supposed to do. That's a different problem. And it was late. Okay. And that is one of the issues. Now, during this time, just to file the lawsuits, it took about eight minutes to file one lawsuit, and ultimately it was hundreds of thousands of dollars to file these lawsuits, which we did on behalf of these clients. I mean, you understand why the court was concerned about making sure there were real people behind these, given that there was a criminal prosecution of lawyers for filing claims on behalf of people that didn't exist. Yes, I'm well aware of that. And granted, some people were acquitted, but some people were convicted in that. And regardless of whether there was intent necessary to convict people of a crime, there were clearly nonexistent clients being purported to be clients, whose ever fault that was, right? Yes, that is correct. I understand the background for this, and it's a fair one. It's not some random thing where the judge is trying to be difficult. You're right, Your Honor. And the only thing that I would have requested was just additional time in which to reach them. I don't understand this. You know, the minute the judge entered that order, then your law firm was up in the crosshairs, okay? And at that point, I mean, it's been a long time since I've been in a law firm, unfortunately. But at that point, had I been in your law firm, I'd have said, this is all hands on deck. We're going to go and we're going to find every one of these people, and we're going to get a wet end signature on this document, and we're going to do it. So you've got 104 people here, and I'd have gotten that number down to some very small amount, even on the basis that you've described. But you didn't do it. And, I mean, it's a problem. Isn't it really a problem with the effort that your law firm made? Well, Your Honor. I realize that's not record. That's not in the record. But you had plenty of opportunity on an all hands on deck basis to get what was required here. And, Your Honor, respectfully, I was on ground zero, and I will speak somewhat off the record to this, that we've ramped up. We added staff. We did everything that we could. It was around the clock. It was reach these people. It wasn't just these 100. There was 400 in Mexico. So for this, we were able to get 300 and file the individual lawsuits. Okay. Which did take, and I'm sure my math is off, but maybe 80 or so hours of just actually entering all the information for the client and getting it on file and paying the $400. And it was quite a process. And I was immediately called to New Orleans for overnight discussions during that time. But we ramped up and did everything. So you had 400 approximately clients, and these are the remaining 100? With respect to Mexico. So we had a larger group. That were part of this effort. Well, there was 1,500 that were part of this effort. But for your firm. No, this is for our firm. It was over 1,500 at this point that we had not resolved to date. We had many more clients than that. But on March 29th, we were responsible for getting over 1,500 and filing the individual lawsuits. Which you can't even, only one, and we ultimately added that we were able to add a second, could access the system. And they were crashing. So there was a lot of technical difficulties with that process. But there could also be, I mean, affidavits and things, declarations filed. As part of why you couldn't do this as quickly. Technical difficulties, travel difficulties, whatever. But those were not filed with Judge Barbier. Even when he gave an extension. The judge was very clear, as was his court and the people working under him during this time. That extensions were not to be given. But he did give an extension. He gave a two-week extension. That is correct. But it just wasn't enough time. And it is in the record. Okay, but we are now more than two years past the suppose it all hands on deck. There's still no evidence. I mean, that's the problem as I see it. As I understand it, a judge is pushing you, maybe in your view, being unreasonable with you. That's when you have your antenna up to preserve error. But you preserve error by putting evidence in the record. Even if it's six months later, you come in with a motion to file affidavit of Mr. X that you just now found floating in the Gulf of Mexico that you couldn't find before, where he documents that he was at sea and unable to, you know. And all of the things you just said would then be documented. Then the judge could say, I'm sorry, I've already denied this. But you'd have something to show the appellate court. I'm still waiting. Well, and Your Honor, and I respect that. And an affidavit, looking back, would have been an affidavit of the efforts taken that were unsuccessful. But during that time, that would have been an affidavit from me. And we just filed motions for extension basically stating the same thing, that we could not reach them. But you didn't state that. I mean, there's no detailed. Well, Your Honor, there are essentially three times that we requested saying that they're at sea. And I can cite you to those motions for extension. Counsel, here's the problem. I'm not being specific enough because you're not seeming to understand. I'm saying, so at the moment, you're doing what you can do. Everything's crashing. You know, you're running around. But since then, nothing more has evolved. I mean, it's been two years. I would assume they're not at sea constantly for two years. So you've either found them or you haven't. They can then give the story of what happened to themselves. It's well after the deadline. You file it anyway. If for no other reason, you say, Your Honor, I'm sorry, but we're going to have to appeal this. So we're not trying to be rude, but we're just trying to get things filed. I mean, it wouldn't be the first time lawyers try to press their point that's then supported by something more than just, well, seamen tend to be at sea. Oh, okay. Well, and, Your Honor, you know, respectfully, the two that I referenced, it's ROA 16265 and then as well as 30321 in the record. Those were the times that after the fact we came forward. So I do have a question about that. Barrera himself appears to have filed something on August 5th, an actual. Does that one have a real signature on 8-5-2016? And I will double check that because I have a different date for that. They filed a supplemental response to the show cause order stating that they received Barrera's signed sworn statement on 7-28. So I'm just looking at my timeline that I made, which would have been helpful to have had from the lawyers. But anyway, on that one, there may in fact be a signed sworn statement in the record, but I'm not positive. That is correct. And there was, and we submitted it as soon as we had it, but there was no effect and the case was dismissed. Okay. Ultimately in December. The record site you gave on the 20-day Abril de Poblado, so on, is to Judge Barbier's denial. It's not to the document. So I would like to know the document because I would like, this is not exactly a short record, and I'll just confess I haven't read all three billion pages of the BP record prior to today's hearing. Nor do I plan to ever read the entirety. So I would need a specific record site to look at the sworn statement to see, does it explain the delay? So during the period, you'll have time for rebuttal. You can look up the record site to the actual document that was filed, not the court order. Okay. And I do believe it's 30321-30360. Okay. And the same issue for 20-day April. I'm sorry if I'm saying that wrong. April. They have since properly filed as of 6-28, and they're still excluded. Is that correct? Those are the only two that properly filed within a couple of months of the whole situation? Yes, Your Honor. That is correct. And then the court issued two more subsequent pretrial orders requiring the same signatures, so our attention did turn to trying to getting those signatures. But those two are uniquely situated as opposed to your other clients that you represent here today? Yes, that is correct. Because they do, in fact, have a proper signed thing in the record, although it was not timely received. Is that correct? That is correct, Your Honor. But does that proper document explain the delay itself? It is not an affidavit explaining the delay. Okay. But I'm just trying to – The only delay explained is in your motions. Okay. Understood. Thank you. Thank you, Your Honor. Can you just tell us why we shouldn't treat those two differently? Sure. So the first one, I think the 20-day Abril complaint is easier to deal with. So originally, on the date, the extended date, right, the date, the 34 days plus the 14, that was May 16th. On May 16th, they filed a mass complaint that was not in compliance with the order. So the 20th day Abril individual complaint that they filed was a second complaint, and it was a second complaint that there was no leave to file an amended complaint for. So it's not an actual signed thing that was supposed to be filed. It's not the right type of document. It's not, right. It's a legal nullity because they didn't have authorization to file that document. But would it have been the right document if it had been two weeks earlier? If it had been two weeks earlier and 20 day Abril was not part of the May 16th complaint so that they were trying to somehow file two complaints, then yes, Your Honor. Okay. Did that document explain the delay? I don't believe so, Your Honor. Or was it just the document they should have filed earlier? I think it's just the document they should have filed earlier, but I would need to check that. I've spent a lot more time with these records, but, you know, it's wise that you don't want to spend your entire judicial career reading some of these records. As fascinating as it would be. I know. I know. Okay. On Barrera? On Barrera, that one is later, if I'm remembering correctly. Right. They didn't until 5. On August 5th. Right. And so there were two other sort of late hits on that one, which they did brief in the district court, but then they abandoned on appeal. That's these references to Alma Jarocha and Andrea Razzarico. So I think those are clearly abandoned because I don't think that Ms. Adams is even arguing about those. But I think our point on Barrera would just be, you know, Judge Barbier, he gave boatloads of process in this case. To read the blue brief, you would think that, you know, he just issued something like, you know, appear in 24 hours and give me X, Y, Z. And folks were like, how could we ever possibly get this done? They got 34 days. If you compare that to times in the Federal Rules of Civil Procedure, for instance, you only get 20 days to answer a complaint. There are all kinds of deadlines that are a lot less than 48 days. So Judge Barbier then, as you noted, Judge Elrod gave an extension of 14 days. That was, you know, obviously a lot of time. And then not only that, as you also noted, Judge Elrod, he gave a show cause process, right? He gave a process where he said, look, here's your last clear chance. Come in and explain to me. And I think it's obvious that meant with actual evidence, right? At the very least with a lawyer affidavit or declaration, and that was never provided. You know, and preferably with the actual people at some point saying, you know, that they couldn't comply on a timely basis. And there was really nothing in response to that show cause order except just repeating the request for an extension. And even here today, we still don't know exactly whether these guys were just, you know, out there right next to the New Orleans river bank or whether they really were way out at sea or whether they really were unavailable, whether they really don't own cell phones or have access to whatever, whatever. We don't know that. I mean, I'm not accusing the law firm of intentionally lying. Neither are we. But what I'm saying is we just don't know. Exactly. But the fact that you are a poor fisherman really doesn't necessarily mean you don't have a cell phone. Because a lot of people have cell phones and it's their only possession. So I can't assume that simply because somebody is a fisherman that they don't have a cell phone or that they don't have access to modern technology sometime within the last two years to contact the world. How would you suggest we, what would you want us to do here today that would be the proper thing? So I think the easiest thing to do is just to affirm on the basis that Judge Barbier affirmed on. Is this affirm? Because, you know, some of those proceedings are not really affirms because they're part of the settlement. This is not that. This is a straight-up regular appeal, right? This is a straight-up regular appeal because there was a final judgment entered dismissing these people. Okay. So this would be you ask us just to affirm the final judgment for the reasons given by Judge Barbier. Right. Okay. And we would, you know, add that, you know, if we could write the opinion that we'd also like to see you declare that these Mexican plaintiffs don't have causes of action to begin with under either OPA or maritime law. Well, now you're getting too far, aren't you? So, well, if the court's not interested. There's no legal basis for that, is there? Well, there's a strong legal basis for that. But it's not as simple as affirming PTO 6. Well, I mean, saying you don't get to file and you wouldn't have filed anything anyway. I mean, I don't know. That seems a little. Well, it's an alternative ground for affirmation. Okay. Thank you. I do have another question. Is this one of the cases where we have briefs that were filed under seal and then we have unsealed briefs? This is all out in the open. I believe this is out in the open. Because some of them we had to do a successive series of briefs with redactions and also the same thing for the record. This one is all out in the open, right? I believe that. And you can obviously confirm that Ms. Adams agrees with that point as well. But this is not. There's an overarching order that Judge Barbier issued sealing the CSSP appeals from the economic law settlement. Then this court entered its own overarching order doing the same thing. But those orders don't apply. But then we, after that, said, oh, we're going to look at them individually, case by case, and we're going to go through every one of them to make sure things should be sealed and unsealed whatever we can, which is what we've done systematically. Right. The practice that you have now is that you issue these kind of seal, unseal letters, and the parties respond by the date specified, and then you decide how to handle. And then if you issue a decision, sometimes it eliminates identifiers and speaks in generalities. Okay. Thank you. Thank you. If I could just briefly respond. These records are not sealed, and so it is wide open. Please do keep in mind that 75% of the clients did return the sworn statements from Mexico. And so they did survive the PTO 60 movement. Here there is no evidence that there was any intentional conduct. There was no ‑‑ there was not ‑‑ there was a tubic extension, but this was really the only one opportunity that they had to respond to the court, and it was a very limited time after the case had been pending for over six years. And nothing had been done. There had been no settlement discussions. And here there was no delay caused by our firm or the client. There's no evidence of that. And there's no prejudice to BP as these cases have not moved. And the ones that are still pending, nothing has been done except two more successive signed statements have been required by the court. If you have no further questions for me, that is all that I have with respect to these. And even if it is a partial remand, these two clients would appreciate that because they did comply as soon as they received our documentation and were able to timely respond. Thank you, counsel. We have your argument. And this case is submitted.